Court of Federal Claims. Thus, respectfully, I dissent.

Sondra **DEERINWATER**, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

No. 95–3260.

United States Court of Appeals, Federal Circuit.

March 13, 1996.

Michael J. Riselli, Riselli & Pressler, P.C., Washington, D.C., argued, for petitioner. With him on the brief was Suzzanne W. Decker.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Department of Justice, Washington, D.C., argued, for respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director and James M. Kinsella, Assistant Director. Also on the brief were Lorraine Lewis, General Counsel and Murray M. Meeker, Attorney, Office of Personnel Management, Office of General Counsel, Washington, D.C., of counsel.

Before PLAGER, RADER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL. Concurring opinion filed by Circuit Judge PLAGER.

SCHALL, Circuit Judge.

Sondra Deerinwater seeks review of the final decision of the Merit Systems Protection Board ("Board") in *Deerinwater v. Office of Personnel Management,* 66 M.S.P.R. 183 (1995). In its decision, the Board affirmed the reconsideration decision of the Office of Personnel Management ("OPM") which denied Deerinwater's application for disability retirement benefits because the application was received by OPM more than one year after Deerinwater had left government employment. We affirm.

## BACKGROUND

Deerinwater entered federal service as a clerk with the Department of the Treasury's Bureau of Alcohol, Tobacco and Firearms ("BATF" or "agency") in November of 1988. In March of 1989, she was involved in an automobile accident in which she sustained injuries to her back. She underwent back surgery on May 1, 1990, and did not report for duty after that date. Consequently, on April 29, 1991, her employment with BATF was terminated.

In October of 1991, Deerinwater retained counsel to represent her in connection with various claims she was making for insurance and disability benefits. On October 13, 1991, she signed an application for disability retirement benefits under the Federal Employees Retirement System ("FERS"), but the application was not submitted to either BATF or OPM at that time. Subsequently, in telephone conversations on April 14, and April 29, 1992, BATF's Employee Relations Specialist told a legal assistant employed by Deerinwater's attorney that the disability retirement application had to be filed with him and that he would forward it to OPM. The Employee Relations Specialist also stated that, if the application was filed with him on or before April 29, 1992, it would be timely filed. A faxed copy of the disability retirement application that Deerinwater had

signed was received by BATF on April 29, 1992. It was not until June 3, 1992, however, that BATF sent the application and supporting documentation to OPM. Included with this material was a letter stating that the agency had received the application on April 29, 1992.

On January 7, 1993, OPM sent Deerinwater a letter stating that it had dismissed her application "because it was not filed within the time limit set by law." On March 16, 1993, OPM denied Deerinwater's request for reconsideration of its January 7 decision. In its reconsideration decision, OPM informed Deerinwater that her application was untimely under 5 U.S.C. § 8453. As noted above, the Board affirmed OPM's decision.

## DISCUSSION

This court affirms a decision of the Board unless that decision is 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule, or regulation having been followed; or 3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Rosete v. Office of Personnel Management,* 48 F.3d 514, 516 (Fed.Cir.1995).

OPM denied Deerinwater's application on the ground that it was not timely filed under 5 U.S.C. § 8453. That statute provides as follows:

A claim may be allowed under this subchapter only if application is filed with the Office before the employee or Member is separated from the service or within 1 year thereafter. This time limitation may be waived by the Office for an employee or Member who, at the date of separation from service or within 1 year thereafter, is mentally incompetent if the application is filed with the Office within 1 year from the date of restoration of the employee or Member to competency or the appointment of a fiduciary, whichever is earlier.[1]

5 U.S.C. § 8453 (1994).

OPM has promulgated a regulation relating to the filing of disability retirement applications. The regulation states as follows:

1. The statute provides that the word "Office" means OPM. 5 U.S.C. § 8401(24) (1994). The

An application for disability retirement must be filed, on a form prescribed by the Office of Personnel Management (OPM), with the employing agency before the employee or Member separates from service or with OPM within 1 year thereafter. A separated employee who submits an application to the former employing agency, rather than with OPM, will meet the filing deadline only if OPM receives the application from the agency within 1 year after the separation.

5 C.F.R. § 844.201(a)(1); *Deerinwater*, 66 M.S.P.R. at 185.

Finally, the disability retirement application which Deerinwater signed on October 13, 1991, and subsequently submitted to BATF contained instructions. One section of the instructions was entitled "SPECIAL INSTRUCTIONS FOR EMPLOYEES WHO HAVE BEEN SEPARATED FROM FEDERAL SERVICE FOR MORE THAN 31 DAYS." That section, which applied to Deerinwater because she had left the government in April of 1991, stated as follows:

Your application for disability retirement must be received by the FERS within one year after the date of your separation.... If you have been separated from Federal service for more than 31 days, you should submit your application directly to FERS rather than to your agency. The address is the Office of Personnel Management, Federal Employees' Retirement System.... If you think you will not have the completed package in time to meet the one year deadline, send FERS the completed SF 3107, SF 3105A, and the medical documentation described in SF 3105C, along with the name, address and telephone number of the person(s) you have asked to provide you with the remaining forms.

Thus, BATF's Employee Relations Specialist gave incorrect advice when he told the legal assistant employed by Deerinwater's attorney that Deerinwater's application would be timely filed if it was received by BATF by April 29, 1992. In fact, it had to be received by OPM, not the agency, by that date.

Deerinwater's first argument on appeal is imaginative. She concedes that *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), forecloses any claim that OPM should be estopped from applying the statutory filing deadline on account of the admittedly incorrect advice of BATF's Employee Relations Specialist. She argues, though, that OPM's regulation is confusing and misleading because it suggests that a person who has left government service but not yet filed an application for disability retirement may timely file by submitting an application to the former employing agency. Deerinwater points to the agency's incorrect advice as evidence that the regulation is confusing and misleading and requests that OPM be instructed to consider her application "constructively and timely filed" with OPM as of the date she filed it with BATF.

Deerinwater does not dispute that the statute itself is clear. Under 5 U.S.C. § 8453, a claim for disability retirement by a person who has left government service may be allowed "only if application is filed with [OPM]" within one year of separation. OPM's regulation states that an application for disability retirement "must be filed ... with the employing agency *before the employee or Member separates from service* or with OPM within 1 year thereafter." 5 C.F.R. § 844.201(a)(1) (emphasis added). Any possible suggestion from this statement that a former employee can meet the statutory filing deadline by submitting an application to the former employing agency is eliminated by the next sentence of the regulation: "A separated employee who submits an application to the former employing agency, rather than with OPM, will meet the filing deadline only if OPM receives the application from the agency within 1 year after the separation." *Id.* The instructions on the disability retirement application that Deerinwater signed reinforce the warning in the regulation: "If you have been separated from Federal service for more than 31 days, you should submit your application directly to FERS rather than to your agency." In

---

mental incompetency provisions of the statute are not at issue in this case.

short, OPM's regulation and the instructions on the disability retirement application make it clear that a disability retirement application by a former employee is timely only if it is received by OPM within one year of separation. This clarity is in no way diminished by the fact that the regulation instructs current employees to submit their applications to the employing agency. Deerinwater's contention that OPM's regulation is confusing and misleading is without merit. Indeed, it is a smokescreen. Although she asserts to the contrary, Deerinwater is trying to make an end run around *Richmond*, in order to escape the consequence of the fact that she received and acted on advice from BATF that was both incorrect and contrary to the clear language of the applicable statute and regulation. *Richmond* bars her claim. Moreover, OPM lacked the authority to consider her application because it was filed out of time. *See Killip v. Office of Personnel Management,* 991 F.2d 1564, 1570 (Fed.Cir. 1993) (where statute established a period for federal employees to make an election to transfer from Civil Service Retirement System to FERS, OPM is without authority to entertain elections made outside that period).

▌ Deerinwater's second argument on appeal is that OPM abused its discretion by promulgating a regulation that distinguishes between classes of disability retirement applicants. Deerinwater is pointing, of course, to the fact that 5 C.F.R. § 844.201(a)(1) states that a person who applies for disability retirement while still employed by the government must submit his or her application to the employing agency, but that a former employee's application is timely only if it is received by OPM within one year of separation.

Deerinwater was a former employee when she filed for disability benefits, and as to former employees the OPM regulation is entirely consistent with the statute. Both the regulation and the statute require that applications of former employees be filed with OPM within one year of separation.[2] In

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court stated that

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Id.* at 842–43, 104 S.Ct. at 2781. In this case, Congress has "directly spoken to the precise question at issue." The statute provides that a disability retirement application must be filed with OPM "before the employee ... is separated from the service or within 1 year thereafter." 5 U.S.C. § 8453. As far as former government employees are concerned, OPM's regulation, 5 C.F.R. § 844.201(a)(1), conforms precisely with 5 U.S.C. § 8453. It states that "[a] separated employee who submits an application to the former employing agency, rather than with OPM, will meet the filing deadline only if OPM receives the application from the agency within 1 year after the separation." In short, in promulgating the regulation it did, OPM "g[a]ve effect to the unambiguously expressed intent of Congress." *See Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1171 (Fed.Cir.) (Congress had "directly spoken" as to funding allocations for various entitlements through earmarks in the appropriations statutes, thus the Department of Education did not err by funding entitlements to the extent specified by the earmarks), *cert. denied,* — U.S. —, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995). We reject Deerinwater's argument that OPM's regulation represents an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the decision of the Board sustaining OPM's reconsideration

---

2. Thus, this case does not involve a situation where the regulation and statute may conflict— i.e. a case where an employee filed a disability retirement application with the agency, as required by the regulation, but the agency then failed to forward the application to OPM within one year of the employee's subsequent separation.

**574**

decision rejecting Deerinwater's application for disability retirement benefits as untimely filed is affirmed.

### COSTS

Each party shall bear its own costs.

**AFFIRMED.**

PLAGER, Circuit Judge, concurring.

Because the opinion of the court is correct as a matter of law, I join it. A reader unfamiliar with the history of this kind of problem might rightly wonder at the harshness of a rule that says if you comply to the letter with the instructions of your employer's designated Employee Relations Specialist, you, not the employer, bear the risk that those instructions may be wrong and that you may be harmed as a result. In this case, Ms. Deerinwater did what her agency told her to do, and because the officer whose job it was to advise her correctly gave her wrong advice, she falls outside the time window the statute prescribes.

The explanation for this hard-to-explain result is found in the Supreme Court's decision in *OPM v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). We are without power to decide otherwise. The Richmond rule, however well reasoned as a legal construct, is not only harsh on citizens who reasonably rely on what government agents with apparent authority tell them, but it provides no incentive for the government to ever get it right. If a remedy for this kind of wrong is to be found, it lies with Congress to provide it.